UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TRINA M. MABUS, | ) | |
| | ) | C/A No.: 4:13-cv-3028-TER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case is before the Court pursuant to Local Rule 83.VII.02, D .S.C., concerning the disposition of Social Security cases in this District on consent of the parties. 28 U.S.C. § 636(c).

## I.  RELEVANT BACKGROUND

### A.  Procedural History

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on March 13, 2007, alleging that she became disabled on March 5, 2007 (Tr. 23, 131-132, 498). Her claims were denied initially and upon reconsideration (Tr. 76-83). Plaintiff then requested an administrative hearing (Tr. 102-103). On September 16, 2009, the ALJ held a hearing at which Plaintiff, who was represented by counsel, appeared and testified (Tr. 41-74). After the hearing, on November 17, 2009, the ALJ issued a decision finding that Plaintiff was not disabled (Tr. 20-40). On January 6, 2011, the Appeals Council declined to review the ALJ decision, rendering it the final

decision of the Commissioner (Tr. 1-5). Plaintiff then appealed this decision to this Court, which issued a decision remanding the case to the Agency for further proceedings (Tr. 603-631). Pursuant to this Court's decision, the Appeals Council remanded Plaintiff's claim to the ALJ, instructing him to hold a new hearing and issue a new decision (Tr. 632-634). The ALJ held a new hearing on April 22, 2013, at which Plaintiff, represented by counsel, appeared and testified (Tr. 529-572). After the hearing, on July 3, 2013, the ALJ issued a new decision finding that Plaintiff was disabled as of January 27, 2010, but not before then (Tr. 495-528).[1] On October 29, 2013, the Appeals Council issued a notice declining to consider Plaintiff's statement of exceptions to the ALJ's decision because it was untimely, and holding that the ALJ's July 2013 decision was the final decision of the Commissioner (Tr. 475-478). Plaintiff filed this action on November 6, 2013, in the United States District Court for the District of South Carolina. This case is ripe for review under 42 U.S.C. § 405(g).

**B.     Plaintiff's Background and Medical History**

    **1.     Introductory Facts**

Plaintiff was born on March 22, 1973 and was 33 years old at the time of the alleged onset. (Tr. 34). Plaintiff has at least a high school and past relevant work experience as a nurse's aide, cleaner, dietary aide, sandwich maker, and waitress.  (Tr. 515).

    **2.     Medical Records and Opinions**

The ALJ provided a detailed summary of the medical evidence, the various physicians' opinions, as well as Plaintiff's testimony, which the Court adopts to the extent that it is consistent with this decision.  Additional factual details will be added where necessary to address the issues raised by the parties.

---

[1]The Court notes that Plaintiff also filed a second application for DIB and SSI on February 5, 2010, which was simultaneously adjudicated by the ALJ.

C.    **The Administrative Proceedings**

**1.**    **The ALJ's Decision**

In the decision of July 3, 2013, the ALJ found the following:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. 404.1571, *et seq*. and 416.971 *et seq*.).

3.    Since the alleged onset of disability, March 5, 2007, the claimant has had the following severe impairments: degenerative disc disease; carpal tunnel syndrome; diabetes mellitus, with diabetic neuropathy; disorders of the knees; major depressive disorder; generalized anxiety disorder; history of posttraumatic stress disorder; morbid obesity. Beginning on the established onset date of disability, January 27, 2010, the claimant additionally had fibromyalgia (20 C.F.R. 404.1520(c) and 416.920(c)).

4.    Since the alleged onset of disability, March 5, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926)).

5.    After careful consideration of the entire record, I find that prior to January 27, 2010, the date the claimant became disabled, the claimant had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with restrictions that require: simple, routine, repetitive tasks; no ongoing interaction with the general public; a low stress environment defined as an environment where there is no requirement to meet a rigid, inflexible production schedule, adapt to frequent changes in the workplace, or make complex decisions; no lifting or carrying over 10 pounds occasionally or less than 10 pounds frequently; no standing or walking over an aggregate of 2 hours in an eight-hour workday; no more than occasional

stooping, twisting, balancing, kneeling, crouching, and climbing of stairs or ramps; no crawling or climbing of ladders, ropes and scaffolds; no required exposure to unprotected heights, dangerous machinery, vibration, or uneven terrain.

6.  After careful consideration of the entire record, I find that beginning on January 27, 2010, the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with restrictions that require: simple, routine, repetitive tasks; no ongoing interaction with the general public; a low stress environment, defined as an environment where there is no requirement to meet a rigid, inflexible production schedule, adapt to frequent changes in the workplace, or make complex decisions; no lifting or carrying over 10 pounds occasionally or less than 10 pounds frequently; no standing or walking over an aggregate of 2 hours in an eight-hour workday; no more than occasional stooping, twisting, balancing, kneeling, crouching, and climbing of stairs or ramps; no crawling or climbing of ladders, ropes and scaffolds; no required exposure to unprotected heights, dangerous machinery, vibration, or uneven terrain; the need to be off-task 15% of the workday and miss 3 or more of days of work per month.

7.  Since March 5, 2007, the claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

8.  Prior to the established disability onset date, the claimant was a younger individual age 18-44. The claimant's age category has not changed since the established disability onset date (20 C.F.R. 404.1563 and 416.963).

9.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

10. Prior to January 27, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on January 27, 2010,

the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P. Appendix 2).

11.    Prior to January 27, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12.    Beginning January 27, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960, and 416.966).

13.    The claimant was not disabled prior to January 27, 2010, but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

14.    The claimant was not under a disability within the meaning of the Social Security Act at any time through March 31, 2008, the date last insured (20 C.F.R. 315(a) and 404.320(b)).

(Tr. 498-518).

## II. DISCUSSION

The Plaintiff argues that the ALJ erred in his decision, and that reversal and an award of benefits are appropriate in this case.  Specifically, Plaintiff believes that the ALJ erred (1) in his evaluation of Plaintiff's Listing level mental impairment; (2) in his application of the treating physician rule; (3) in his evaluation of Plaintiff's credibility; and (4) in his formulation of a residual functional capacity for the time period preceding January 27, 2010 which Plaintiff argues is not supported by substantial evidence. (Plaintiff's brief hereinafter "Pl. Br."). The Commissioner argues that the ALJ's decision is supported by substantial evidence and legally correct, and should thus, be

affirmed.

**A.**         **LEGAL FRAMEWORK**

 **1.** **The Commissioner's Determination–of–Disability Process**

 The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

 To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from

---

 [2]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is

performing PRW;[3]  and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

---

disabling at Step 3).

[3]In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

**2.    The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See id.; Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The Court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir.1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the Court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the Court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. See Vitek, 438 F.2d at 1157–58; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the Court disagree with such decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

**B.    ANALYSIS**

**1.    LISTING ANALYSIS**

One of issues raised by Plaintiff is the ALJ's Listing 12.04 evaluation of her mental

impairments. Plaintiff asserts that her treating psychiatrist, Dr. Leah McCartt, found that the Plaintiff met Listing 12.04 for affective disorders for the period 2007-2009. (Tr. 350). Her treatment notes begin on July 30, 2007, which is before the date last insured. Plaintiff indicates that Dr. McCartt clearly states that the she meets Listing 12.04. (Tr. 350, 353) and specifically indicates that she meets the "C" criteria and at least a significant percentage of the time meets the "B" criteria as well.

Plaintiff argues that in his decision the ALJ confuses the "B" and "C" criteria when he allegedly states that the Plaintiff does not meet the "C" criteria because her hospitalization did not last for two weeks or more. Plaintiff also argues that in the alternative, the ALJ fails to provide any meaningful analysis as to the "C" criteria at all.

The Plaintiff bears the burden of showing that her impairment(s) meet a listing. See Bowen v. Yuckert, 482 U.S. 136, 146 at n. 5 (1987); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.1995) ("The applicant bears the burden of production and proof during the first four steps of the inquiry") (citations omitted). To show that her impairment(s) meet a listing, a claimant must establish that her impairment(s) "meets *all* of the specified criteria" that relate to such listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original). With respect to listing 12.04, the claimant must show that her mental impairment(s) results in any two of these limitations: "(1) [m]arked restriction of activities of daily living; or (2) [m]arked difficulties in maintaining social functioning; or (3) [m]arked difficulties in maintaining concentration, persistence, or pace; or (4) [r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Part 404, Subpart P, App. 1 § 12.04(B). Alternatively, under paragraph "C" of listing 12.04, the claimant can also show that her mental conditions meet the listing if the record establishes a

Medically documented history of a chronic affective disorder of at least 2 years'

duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, App. 1 § 12.04(C)

Dr. McCartt found that Plaintiff's mental condition resulted in moderate-to-marked restrictions in Plaintiff's ability to perform daily activities; moderate limitations in her ability to maintain concentration, persistence or pace; and marked limitations in her social functioning capacity (Tr. 360). She also found that Plaintiff had experienced one or two episodes of decompensation (Id.), and that her impairments met the paragraph "C" criteria of listing 12.04 as she concluded that Plaintiff has "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or changes in the environment would be predicted to cause the individual to decompensate." (Tr. 361).

In discussing the "B" criteria, the ALJ found that Plaintiff had moderate restrictions in her ability to perform daily activities; moderate difficulties in maintaining social functioning; moderate difficulties in her ability to maintain concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 503). The ALJ elaborated on his findings as follows:

> Claimant has a history of anxiety and depressive disorders with continuous treatment as described under Finding 5. In addition, Dr. Bradley observed concentration deficits, blunted affect, and depressed mood (Exhibit 11F/3), and claimant was hospitalized due to suicidal ideations in February 2009 (Exhibit 26F).
> Nonetheless, claimant reported she drove, did household chores, cared for a child, took her child to school, and prepared meals in December 2007 (Exhibit 11F/2). Dr. O'Leary's mental status examinations in 2008 and 2009 revealed appropriate mood and affect (Exhibit 24F), and mental status examinations of record

were generally unremarkable (Exhibits 24F, 27F, 31F, 42F, and 52F). The claimant testified she helps her daughter with homework, takes her daughter to school, attends church, goes grocery shopping, and can prepare meals. Moreover, Leah McCartt, MD and John Kennedy, MSW reported Global Assessment of Functioning scores of 55-76 (Exhibits 27F, 31F, and 40 F), indicating slight to moderate difficulty in functioning. Furthermore, Edward Waller, PhD and Philip Michels, PhD assessed moderate limitations in maintaining social functioning and concentration, persistence, or pace after reviewing claimant's records (Exhibits 12F, 34F, 44F, and 45F).

I note that though claimant was hospitalized due to suicidal ideations in February 2009 (Exhibits 26 F), an episode of decompensation of "extended duration" refers to an episode of decompensation lasting 2 weeks or more, and claimant was discharged after only a few days in February 2009.

(Tr. 503).

Next, the ALJ notes that "[t]he claimant's mental impairment(s) does not satisfy the paragraph "C" criteria of the applicable mental disorder listing(s).

A natural reading of this portion of the ALJ's opinion indicates that the ALJ did not confuse the "B" and "C" criteria. Rather the ALJ fully discussed the "B" criteria and his statements with regards to episodes of decompensation was a part of that discussion. Although the ALJ makes a summary statement with regard to the "C" criteria at this juncture of the opinion, the Court finds that his subsequent discussion of Dr. McCartt's opinion adequately explains his findings. In relevant part, the ALJ notes that:

Dr. McCartt completed a psychiatric Review Technique form concerning claimant in August 2009. Therein, Dr. McCartt reported claimant had depressive and anxiety disorders with moderate difficulties maintaining concentration, persistence or pace, moderate to marked restriction in activities of daily living, and marked difficulties maintaining social functioning. Dr. McCartt also indicated that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation.

I accord Dr. McCartt's opinions some weight. Dr. McCartt is a treating psychiatric specialist and medical evidence documents ongoing treatment for depression and anxiety. However, the Global Assessment of Functioning scores reported by Dr. McCartt and Mr. Kennedy described above indicate claimant was not nearly as limited as Dr. McCartt assessed in the form. In addition, the generally

11

unremarkable mental status examinations of record indicate claimant was not as limited as Dr. McCartt assessed (Exhibits 24F, 27F, and 31F). Moreover, Dr. McCartt's opinion that claimant had markedly limited ability to maintain social functioning is inconsistent with Dr. Bradley's assessment, Dr. Waller's assessment, and Dr. Michels' assessment. I note, however, Dr. McCartt's opinion that claimant should not be exposed to changes in mental demands or workplace environs is largely consistent with claimant's documented history of anxiety and depression, though the unremarkable mental status examinations and Global Assessment Functioning scores in the 60s and 70s described above indicate claimant could likely tolerate more than "minimal" changes.

(Tr. 512).

The ALJ appropriately discounted Dr. McCartt's opinion that Plaintiff's mental impairments result in restrictions so severe that they would render her de facto disabled at step three. The ALJ found that this opinion was not entirely reliable because it was inconsistent with other evidence in the record, including Plaintiff's unremarkable mental status examinations and Dr. McCartt's treatment notes which contained high Global Assessment of Functioning (GAF) scores that the doctor herself assessed[4] (Tr. 512). Plaintiff's records from Lexington Mental Health consistently reveal essentially normal objective mental status findings (Tr. 283, 442, 445, 448, 451, 455, 458, 865-866). The findings include normal judgment, cognition, memory, attention and concentration (Id.), which directly contradict Dr. McCartt's findings of significant restrictions in these areas (Tr. 360).

---

[4]Plaintiff argues that the ALJ improperly cites GAF numbers to reject disability. While GAF scores are not alone a permissible indicator of disability and in fact have been discontinued in the DSM–V which was published in 2013, the ALJ is not precluded from considering them in determining whether a treating physician's opinion is consistent with his own treatment notes when evaluating the reliability of the physician's opinion regarding a claimant's level of functioning. See also Parker v. Astrue, 664 F.Supp.2d 544, 557 (D.S.C.2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"). In this case, considering that the ALJ notes additional evidence such as numerous unremarkable mental status exams in reaching his conclusion that Plaintiff was not as limited as Dr. McCartt opined, the Court finds no error in consideration of Plaintiff's GAF scores.

Likewise, as the ALJ found (Tr. 512), Dr. McCartt herself assigned Plaintiff GAF scores as high as 70,[5] which also suggests Plaintiff's mental symptoms were not as severe as she claimed in her opinion (Tr. 446, 862 (assigning plaintiff a GAF score of 70); See also, Tr. 454, 460 (GAF score of 65 by Mr. Kennedy)). Additionally, all state agency psychologists who reviewed Plaintiff's records identified mental limitations below the severity required under the listing (Tr. 319-320, 889-890, 1016-1017). 20 C.F.R. §§ 404.1527(e)(2)(I) and 416.927(e)(2)(I) (under the Social Security regulations, state agency reviewing physicians must be viewed as "highly qualified physicians… who are also experts in Social Security disability evaluation."). Indeed, none of these doctors found that Plaintiff met either the part "B" or "C" criteria of listing 12.04. For these reasons the Court finds that substantial evidence supports the ALJ's Listing 12.04 finding as well as his treatment of Dr. McCartt's opinion as a treating physician.

### 2.     TREATING PHYSICIAN RULE

Plaintiff also asserts that the ALJ erred in his application of the treating physician rule in relations to the opinions of Plaintiff's treating physicians. Specifically, Plaintiff claims the ALJ improperly discredited the opinions of Drs. James O'Leary, Gurdon Counts, Leah McCartt, James Brennan, Bradley Presnal, and Van Dam. The Commissioner argues that substantial evidence supports the ALJ's analysis of the opinions and/or findings of the Plaintiff's treating physicians.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight

---

[5]A GAF score between 61 and 70 indicates some *mild* symptoms or some difficulty in social, occupational, or school functioning. The patient is *generally functioning well* and has some meaningful interpersonal relationships. *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV) 34 (American Psychiatric Association, 4th ed. 2000) (emphasis added).

is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(c)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

### a.    Dr. O'Leary

Dr. O'Leary, the Plaintiff's treating orthopaedist, treated Plaintiff for inter alia, low back pain and right hip pain beginning in April of 2008 (which is after her date last insured). He assessed the

Plaintiff as a "brittle diabetic" and noted a "markedly abnormal clinical exam." (Tr. 397). A notation in Dr. O'Leary's notes reflect

> "She certainly has a markedly abnormal clinical exam and she appears to be a brittle diabetic...Her exam is certainly that of a person much older than her stated age."

(Tr. 397).

On June 26, 2008 Dr. O'Leary noted that the Plaintiff was using a cane and has an antalgic gait. She had a "mildly positive" straight leg raising test on the left, but negative on the right. Dr. O'Leary noted that the Plaintiff's neuropathy was demonstrated by decreased sensibility and a stocking distribution involving both lower extremities. (Tr. 393)

In August of 2008, Dr. O'Leary filled out a Residual Functional Capacity form in which he stated that the Plaintiff is at the less than sedentary level. He noted that the claimant cannot feel her feet, has poor gait, and uses a cane. (Tr. 363-364).

Dr. O'Leary continued to assess the Plaintiff's gait as slow and shuffling, re-affirming this on November 13, 2008. (Tr. 377).

The ALJ's assessment of Dr. O'Leary opinion reads as follows:

> I give Dr. O'Leary's opinions little weight. Dr. O'Leary is a treating physician. However, while Dr. O'Leary's notes document some significant objective abnormalities such as decreased lumbar spine motion and abnormal gait, Dr. O'Leary's notes do not document the sort of abnormalities one would expect of an individual as limited as Dr. O'Leary assessed. In particular, Dr. O'Leary's notes generally report intact motor function, strength, and sensation, and negative to mildly positive straight leg raise testing (Exhibit 24F). In addition, imaging of claimant's spine showed only modest abnormalities, nerve conduction studies revealed only mild peripheral neuropathy, the record reveals no emergent treatment due to back pain, and Drs. Merriweather, Humphries and Counts all assessed claimant could perform some postural activities. Moreover, Dr. O'Leary is not a psychiatric specialist, the mental limitations Dr. O'Leary assessed were not specific, and the mental limitations Dr. O'Leary reported are inconsistent with the generally unremarkable mental status examinations of record prior to 2010 (exhibits 24F, 27F and 31F).

(Tr. 510).

The ALJ considered Dr. O'Leary's opinion, but assigned it little weight because it was inconsistent with other evidence in the record.  Despite the disabling limitations Dr. O'Leary assigned Plaintiff, the ALJ notes that the doctor generally found that she exhibited negative or only mildly positive straight leg raise testing, and normal strength and sensation (Tr. 367, 369, 371, 375, 377, 397). The ALJ also considered that objective testing during the period at issue, including MRI and EMG studies, revealed only mild issues (Tr. 510; supported at Tr. 329 (lumbar MRI shows mild diffuse disc bulge), Tr. 371 (describing subsequent lumbar MRI examination as showing only mild stenosis), and Tr. 392 (EMG shows mild sensory peripheral neuropathy)). Further, as the ALJ also noted (Tr. 510), Plaintiff's treatment for back pain was not of an emergent nature. Indeed, while Plaintiff received lumbar epidural injections for her back, Dr. O'Leary found that she was not considered a surgical candidate (Tr. 394). The Court concludes that substantial evidence supports the ALJ's evaluation of Dr. O'Leary's opinions.

### b.      Dr. Counts

Dr. Counts, Plaintiff's primary care source during the relevant period completed an RFC form in June 2007 assigning Plaintiff disabling physical limitations (Tr. 263-265).

With regards to this opinion, the ALJ indicated:

> I accord Dr. Counts' opinions little weight.  Dr. Counts provided minimal explanation for his conclusions.  Dr. Counts is not an orthopedic specialist, and it is unclear how back pain would cause problems with handling.  I note Dr. Counts had only seen claimant once in 2007 prior to rendering these opinions (Exhibit 7F/4).  In addition, Dr. Counts' contemporaneous records do not document any objective abnormality to substantiate the highly restrictive limitations he assessed, indicating such were merely based on claimant's subjective statements.  Thus, Dr. Counts' opinions appear to be lacking in objectivity.  Finally, Dr. Counts' opinions are inconsistent with the assessments of Drs. Merriweather and Humphries, both of

whom have substantial experience applying Social Security disability law and policy and provided detailed rationale for their conclusions.

(Tr. 509).

The ALJ appropriately discounted Dr. Counts opinion in finding that it lacked any significant explanation for the limitations identified therein, it was unsupported by Dr. Counts' treatment records, and because Dr. Counts was not an orthopaedist specialist (Tr. 509). Agency regulations indicate that the lack of explanation for an opinion is an appropriate factor for the ALJ to consider. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Also, the ALJ noted that Dr. Counts' opinion was unsupported by his treatment notes, which show that he only met once with Plaintiff close to the time when he completed the opinion at issue, and he did not identify any significant findings during this meeting (Tr. 269). Lastly, the fact that Dr. Counts was not an orthopaedist was also a proper factor for the ALJ to consider.

Additionally, in July of 2009 Dr. Counts indicated that Plaintiff was totally and permanently disabled, with such disability beginning in August 2007. (Tr. 333). Dr. Counts stated on another occasion that the Plaintiff is disabled and "unable to be gainfully employed." (Tr. 337). The ALJ appropriately gave these opinions minimal weight as they spoke to an issue reserved to the Commissioner.  Determinations of disability are ultimately "an issue reserved to the Commissioner" (Tr. 543). More fully, pursuant to SSR 96-5p, available at 1996 WL 374183, at *2, "treating source opinions on issues that are reserved to the Commissioner are never entitled to . . . special significance. Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled" (emphasis added). That said, opinions from any medical source on issues reserved to the Commissioner must

never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record. Id. at *3. In this case, the ALJ considered Dr. Count's opinions in their entirety while specifically noting that Dr. Counts provided no explanation for his opinions and that his treatment notes do not report objective abnormalities which would support such opinions. (Tr. 509). The ALJ's evaluation of Dr. Count's opinion is appropriate under the treating physician rule.

### c.     Dr. McCartt

For the reasons noted supra in the Court's discussion of the Listing 12.04 analysis, the Court concludes that the ALJ appropriately considered Dr. McCartt's opinions under the treating physician and the ALJ's findings with regards to this opinion are supported by substantial evidence.

### d.     Dr. Brennan

Dr. Brennan treated Plaintiff regularly for her diabetes at Laurel Endocrine Associates. Dr. Brennan did not complete an assessment of Plaintiff's RFC; nonetheless, Plaintiff relies on the information contained in the doctor's treatment notes to argue that a more restrictive RFC was warranted. (Pl. Br. at 8-10). Plaintiff cites treatment notes from various appointment dates which note that her diabetes was "uncontrolled" during the period at issue. Id. She also notes findings of diabetic neuropathy. While Plaintiff is correct that the doctor described her diabetes as uncontrolled, the doctor also stated that it was "uncomplicated" and most of the treatment notes show that Plaintiff was doing well (Tr. 286, 399, 402, 405, 408, 417, 421, 851 (Plaintiff reports feeling well/fair); Tr.

18

400, 403, 406, 409, 415, 419, 422, 853 (describing Plaintiff's diabetes as "uncomplicated, uncontrolled")). Moreover, even assuming Plaintiff's diabetes was uncontrolled and resulted in some symptoms during the relevant period, this information does not establish a more restrictive RFC than the ALJ assessed. The ALJ did not find that Plaintiff's diabetes was asymptomatic – indeed, he found that it was a severe impairment at step two. Rather, the ALJ found that the record, including the evidence related to Plaintiff's diabetes, did not preclude Plaintiff from performing the limited range of sedentary work he assessed pre January 2010.  Plaintiff fails to show how Dr. Brennan's treatment records affect this finding.

### e.    Drs. Presnal and Van Dam

Plaintiff briefly cites records from Drs. Presnal and Van Dam.  She indicates that on July 13, 2006, Dr. Presnal at the Moore Clinic found diabetic neuropathy. (Tr. 233). Plaintiff also notes that on February 14, 2007, Dr. Van Dam diagnosed the Plaintiff with lumbar spondylosis and performed an epidural steroid injection. However, other than these notations, the Plaintiff does not explain how these records warrant a more restrictive RFC finding for the period pre-January 2010.  Neither of these doctors identifies any specific RFC limitations affecting Plaintiff.

### 3.    RFC (PRIOR TO JANUARY 2010)

Plaintiff also alleges that the ALJ's pre-January 2010 RFC finding, which determined that Plaintiff retained the capacity to perform a limited range of sedentary work, is not supported by substantial evidence.  As part of her argument the Plaintiff indicates that the ALJ's pre-January 2010 RFC finding is unsupported because the ALJ did not identify any reason for finding that Plaintiff's RFC was more restrictive as of January 27, 2010, the ALJ's determined date of disability. The Commissioner disagrees with Plaintiff's position.

19

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184, at *2. It is the claimant's burden, however, to establish how her impairments impact her functioning. *See* 20 C.F.R. §§ 404.1512(c), 416.946(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Maj. J. Mem. & Rec.) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2012), *aff'd*, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

In the instant case, substantial evidence supports the ALJ's assessment of Plaintiff's RFC prior to January 2010.

In concluding that Plaintiff's condition deteriorated starting in January 2010, the ALJ found as follows:

> In January 2010, claimant sought treatment with Dr. Ogburu-Ogbonnaya, a pain and neurological specialist, whose records reveal fibromyalgia with diffuse aches and tenderness, pain with straight leg raising, and continuous use of a walker for ambulation. In addition, records from Lexington Medical Center report acute renal failure in October 2010, and subsequent notes from Laurel Endocrine and Thyroid Specialists report diabetic neuropathy. Furthermore, Jason Lynn, MD., reported MRI of the spine in January 2013 showed worsened diffuse disc bulging with moderate central canal stenosis at T11-T12. Moreover, Dr. Garde observed substantial abnormalities in June 2010, including decreased cervical spine motion, decreased lumbar spine motion, decreased knee and hip motion, pain with straight leg raising, and decreased squatting ability.

(Tr. 513) (internal citations omitted).

20

Plaintiff asserts that "continuous use of a walker" in 2010 does not suggest that her condition worsened because her gait before January 2010 was also noted to be problematic (Pl. Br. at 4). However, reference to her slow and shuffling gait prior to 2010 is markedly different from a gait requiring continuous use of a walker in 2010, and this finding supports the conclusion that her condition deteriorated as of January 2010. As noted by the Commissioner, in around mid-2007, Plaintiff reported walking one mile daily, which suggests her gait was much more functional at the time (Tr. 249, 250, 256). Also, before 2010, Plaintiff reported using a cane due to gait problems, but not a walker (Tr. 305, 338, 368, 393). Significantly, as late as July 2009, Plaintiff's doctor observed that "[s]he [was] able to walk unassisted, but [did] better with a walking stick" (Tr. 338).

Similarly, the ALJ was correct in noting that Plaintiff's objective physical exam findings show more severe problems in 2010. For example, while the ALJ observes that Plaintiff's treatment records from Dr. Ogburu-Ogbonnaya, the pain specialist Plaintiff began seeing in January 2010, show, inter alia, positive results to straight leg raise testing (Tr. 513), Plaintiff's examinations before then revealed either negative, equivocal, or only "mildly positive on the left" findings on this point (Tr. 367, 369, 371, 375, 377, 397). Also, Plaintiff was not diagnosed with fibromyalgia until after she began treating with Dr. Ogburu-Ogbonnaya in 2010. (Tr. 945, 946, 949, 953).

Although Plaintiff argues that her diabetes was described as uncontrolled before 2010 (Pl. Br. at 8), as noted supra, there were also notations that it was "uncomplicated," and it was in 2010 that Plaintiff began having to visit the emergency department due to significant diabetes symptoms, including renal failure (Tr. 931-932, 973-982, 1104-1116).

Additionally, the Court notes that the medical opinions of the reviewing agency doctors support the ALJ's pre-January 2010 RFC finding. Agency regulations state that expert opinions of

21

medical reviewers may amount to substantial evidence where, as here, they represent a reasonable reading of the relevant medical evidence. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) (ALJ can give great weight to an opinion from a medical expert when the medical expert has thoroughly reviewed the record and the opinion is consistent with other opinions and objective medical evidence in the record); see also 20 C.F.R. §§ 404.1527(e)(2)(I) and 416.927(e)(2)(I) (under the Social Security regulations, state agency reviewing physicians must be viewed as "highly qualified physicians… who are also experts in Social Security disability evaluation."). Here, the opinions of all agency doctors who reviewed Plaintiff's records are either consistent with the ALJ's RFC or reveal less restrictive findings that are less favorable to Plaintiff.

From a physical standpoint, the ALJ relied on the opinions of Drs. Ellen Humphries and Rebecca Merriweather (Tr. 507-508). Dr. Humphries opined that Plaintiff retained the physical RFC to perform a limited range of light work, which exceeds the ALJ's RFC finding of less than sedentary work (Tr. 296-303). Dr. Merriweather, in turn, found that Plaintiff was restricted to a limited range of sedentary work, as the ALJ found (compare Tr. 905-912 with Tr. 504). The ALJ found Dr. Merriweather's opinion more consistent with the record and noted that she had reviewed more of Plaintiff's records than Dr. Humphries had the opportunity to consider; accordingly, he assigned greater weight to Dr. Merriweather's opinion (Tr. 508). Substantial evidence supports the ALJ's reliance on these opinions for the period preceding January 2010.

Regarding, Plaintiff's mental impairments, the opinions of reviewing Drs. Edward Waller and Philip Michel, and consultative psychiatrist Dr. John Bradley, substantially support the ALJ's RFC determination. Both Drs. Waller and Bradley opined that Plaintiff retained an RFC consistent with the ALJ's finding (compare Tr. 504 and Tr. 325, 895, 1022). Dr. Bradley also identified

findings supporting the ALJ's RFC, such as his determination that Plaintiff exhibited adequate social skills and generally moderate symptoms[6] (Tr. 306-307). The ALJ reasonably relied on the opinions and findings of these doctors (Tr. 510-511).

Additionally, Plaintiff's essentially normal mental status findings throughout the period at issue and the high GAF scores her mental health providers assigned her suggest that she retains the capacity to perform simple work with certain additional restrictions, as the ALJ and the reviewing doctors concluded.

For the reasons discussed, and having concluded that the opinion evidence of Plaintiff's treating physicians was appropriately considered and evaluated, the Court finds that the ALJ's conclusion that Plaintiff's symptoms deteriorated as of January 2010, resulting in a more limited RFC finding, is supported by substantial evidence.

### 4.     CREDIBILITY ANALYSIS

Plaintiff alleges also that the ALJ failed to properly evaluate and make adequate findings regarding Plaintiff's credibility.  The undersigned disagrees. The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985).

It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by

the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision. SSR 96–7p.

Under Craig v. Chater, 76 F.3d 585, 591–96 (4th Cir.1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96–7p.

When assessing the credibility of Plaintiff's subjective complaints, the ALJ must analyze such complaints in view of the following factors: (1) the nature, location, onset, duration, frequency, radiation and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and, (6) Plaintiff's daily activities. Craig v. Chater, 76 F.3d 585, 593 (4th Cir. 1996) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). In addition to these factors, the ALJ must consider all of the relevant evidence in assessing the claimant's credibility concerning the intensity and persistence of the pain and its limiting effects. 20 C.F.R. § 404.1529(c). A claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment,

24

and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Mickles, 29 F.3d at 927.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) ( quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.

Here, the ALJ accepted that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, but cited both objective and subjective evidence detracting from Plaintiff's statements regarding the extent of her limitations in a lengthy section of his opinion entitled "evaluation of the credibility of claimant's allegations."

With regards to claimant's allegations related to her anxiety and depression, with problems being around people, inability to perform complicated tasks, and inability to stay on task, the ALJ noted in relevant part:

> However, despite allegations of inability to stay on task and great difficulty being around others, claimant reported she could pay attention 1-2 hours, "[a]lmost always" follow instructions, and handle changes in routine well in October 2007 (Exhibit 6E/6-7).

(Tr. 505).

Additionally, in evaluating Plaintiff's credibility as to both her mental and physical limitations, the ALJ expressly considered Plaintiff's daily activities. He found that Plaintiff reported

25

that she drove, did household chores, cared for a child, took her child to school, and prepared meals in December of 2007.  She was also noted to walk a mile every day in April of 2007, capable of lifting up to 10 pounds in October of 2007, and able to shop for her family's needs in stores.  She also attended church.

The ALJ's consideration of these factors indicates that he adequately considered how Plaintiff's impairments affected his daily routine. Courts have generally found that evidence of similar levels of activity tends to weigh against a finding of disability. See Johnson, 434 F.3d at 658 (ALJ properly found claimant's description of "excruciating" pain inconsistent with her testimony that she cooked, cleaned the house, read, watched television, visited relatives, and attended church twice weekly); accord Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Gross, 785 F.2d at 1166.

Additionally, the ALJ also considered other evidence of record, including inter alia, generally unremarkable mental status examinations, lumbar spine MRIs from 2006, 2008, and 2009 showing only mild abnormalities, nerve conduction studies which showed only "[m]ild" peripheral neuropathy," negative (or mildly positive) straight leg raise testing prior to 2010, which highlighted the inconsistency between Plaintiff's complaints and the record evidence.

Plaintiff asserts certain specific issues with regards to her position that the ALJ erred in evaluating her credibility, specifically as to how it changed in January of 2010. Plaintiff takes issue with the ALJ's statement that she had no difficulty sitting by March 2010 (Tr. 506), which she claims does not support the ALJ's determination that her impairments deteriorated in January 2010 and rendered her disabled as of that time. (Pl. Br. at 16). In reviewing the ALJ's credibility determination in its entirety as well as the ALJ's RFC determinations pre and post January 2010, the Court does not find Plaintiff's position to be persuasive. The ALJ did not rely on the fact that Plaintiff's ability

26

to sit degraded after January 2010 to find her disabled, nor did he indicate that Plaintiff's ability to

sit was any different after January 2010 (compare Tr. 513 and Tr. 504). Rather, the ALJ found that

Plaintiff was unable to work after January 2010 because, as of that date, she would "need to be off-

task 15% of the workday and miss 3 or more days of work per month" (Id.).

Plaintiff also asserts that the ALJ's credibility analysis is deficient because the ALJ erred in

finding that she did not need a cane. (Pl. Br. at 16). The ALJ stated that Plaintiff did not

"necessarily" need a cane (Tr. 507), and, in doing so, cited substantial evidence in the record

supporting that conclusion:

> Claimant further alleged she has used a cane since 2004; however, I find claimant was able
> to stand and walk within the parameters set forth in my residual functional capacity finding
> without necessarily using a cane.  First, claimant's allegation is inconsistent with her
> previous testimony that she had only used a cane for six months as of September 2009.  In
> addition, examinations did not show significant loss of lower extremity strength, Mark
> Lencke, MD reported claimant was "able to walk unassisted, but d[id] better with a walking
> stick" in July 2009 (Exhibit 20F/1); claimant reported walking a mile every day in April
> 2007 (Exhibit 3F/16); and Dr. Merriweather assessed claimant's walker "d[id] not appear to
> be warranted" after reviewing claimant's records in 2010 (Exhibit 37F).

The ALJ reasonably concluded that Plaintiff did not necessarily need a cane. See Johnson, 434 F.3d

at 653.

Finally, Plaintiff disputes the ALJ's finding that she modified her testimony a number of

times during the hearing. (Pl. Br. at 17). A review of the administrative hearing transcript, however,

supports the ALJ's finding.  (Tr. 544, 545 (Plaintiff testified at her second administrative hearing that

she had not performed household chores since 2006, which ALJ observes is inconsistent with her

testimony at the first hearing); Tr. 58-59, 556 (during her first hearing, Plaintiff stated she started

using a cane in 2009, but, during her second hearing, she testified she began using a cane in 2004)).

 Moreover, even if the ALJ erred as to his factual finding regarding testimony modification, the error

is harmless as substantial evidence in this case otherwise supports the ALJ's adverse credibility assessment. See Holloway v. Colvin, No. 8:12-cv-02664-DCN, 2014 WL 1315249, at *4 (D.S.C. Mar. 30, 2014).

The ALJ is responsible for assessing a claimant's credibility and resolving conflicts in the evidence, Hays v. Sullivan, 907 F.2d at 1456.    The Court finds that the ALJ's discussion of Plaintiff's credibility is very specific and is supported by substantial evidence, such that the ALJ's credibility determinations are entitled to deference.

Finally, Plaintiff argues that "there is no rational reason" for the ALJ to find that she has difficulty interacting with the public, but not with supervisors or co-workers. (Pl. Br. at 18-19). Other than a citation to "logic," Plaintiff provides no support for this contention.  After review, the Court concludes that the ALJ reasonably found that Plaintiff's RFC included restrictions in her ability to deal with the public only. Although Dr. Waller (state agency physician) found that Plaintiff would perform better in a low stress job setting that does not require ongoing interaction with the public, he did not impose any restrictions on her interaction with co-workers or supervisors.  (Tr. 325, 895) Dr. Michel (also a state agency physician)  found that Plaintiff had the ability to work in coordination with or proximity to others without being distracted by them. (Tr. 1022). The ALJ reasonably relied on the opinions of these doctors and Plaintiff's position is without merit.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock,

483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is, **ORDERED** that the Commissioner's decision be **AFFIRMED**.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

March 26, 2015
Florence, South Carolina

29